AO 91 (Rev. 11/82)                                    **CRIMINAL COMPLAINT**

| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>BRIAN LEE | DOCKET NO.<br><br>*[stamp: FILED CLERK, U.S. DISTRICT COURT AUG 14 2019 CENTRAL DISTRICT OF CALIFORNIA DEPUTY]*<br><br>MAGISTRATE'S CASE NO.<br>19MJ03339 |

Complaint for violation of Title 18, United States Code, Section 922(g)(1)

| NAME OF MAGISTRATE JUDGE<br>THE HONORABLE JOHN MCDERMOTT | UNITED STATES<br>MAGISTRATE JUDGE | LOCATION<br>Los Angeles, California |
|---|---|---|

| DATE OF OFFENSE<br>July 20, 2019 | PLACE OF OFFENSE<br>Los Angeles County | ADDRESS OF ACCUSED (IF KNOWN) |
|---|---|---|

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

[18 U.S.C. § 922(g)(1)]

On or about July 20, 2019, in Los Angeles County, within the Central District of California, defendant BRIAN LEE knowingly possessed ammunition as a previously convicted felon.

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED.

(See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE:  N/A

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT<br>**GEORGE POOR**<br><br>OFFICIAL TITLE<br>Special Agent, Bureau of Alcohol, Tobacco, Firearms and Explosives |
|---|---|

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE[1]<br>JOHN E. MCDERMOTT | DATE<br>8/14/2019 |
|---|---|

[1] See Federal Rules of Criminal Procedure 3 and 54

AUSA Edward Han 213-894-8230          REC: Detention

## AFFIDAVIT

I, George Poor, being duly sworn, declare and state as follows:

## I.  PURPOSE OF AFFIDAVIT

1.     This affidavit is made in support of a criminal complaint and arrest warrant against BRIAN LEE ("LEE") for a violation of 18 U.S.C. § 922(g)(1): Felon in Possession of Ammunition.

2.     This affidavit is also made in support of an application for a warrant to search the person of LEE, as described more fully in Attachment A, for evidence, fruits, or instrumentalities of violations of Title 18, United States Code, Section 922(g) (Felon in Possession of Ammunition) (the "Subject Offense"), as described more fully in Attachment B.  Attachments A and B are incorporated herein by reference.

3.     The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint, arrest warrant, and search warrant, and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. BACKGROUND OF AFFIANT

4.     I am a Special Agent ("SA") with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and

Explosives ("ATF"), currently assigned to the Los Angeles Field
Division.   I have completed the following professional training
at the Federal Law Enforcement Training Center ("FLETC") in
Glynco, Georgia: (1) Criminal Investigator Training Program
(twelve weeks); and (2) Special Agent Basic Training at the ATF
National Academy, located at FLETC (fifteen weeks).   I have also
received specialized training while attending the academies at
FLETC concerning violations of the Gun Control Act within Title
18 of the United States Code and violations of the Controlled
Substance Act within Title 21 of the United States Code.   That
specialized training included: surveillance, interviewing,
warrant writing, evidence handling, arrest procedures, search
procedures, and testifying in court.   Since July 2019, I have
actively participated in several cases involving prohibited
persons possessing firearms, persons trafficking firearms and
controlled substances, persons possessing illegal firearms, and
persons affiliated with gang activity.   During my time as an SA
in the ATF Los Angeles Field Division, I have participated in
many ATF operations with federal joint task forces and local
police involving the investigation of violations of firearms and
narcotics laws.

     5.   Prior to becoming a Special Agent with ATF, I was a
police officer with the Washington, D.C. Metropolitan Police
Department ("MPD") for approximately three years.   During my
tenure with MPD, I participated in dozens of investigations
regarding violent crime, illegal drug trafficking, and illegal

possession of firearms.  I also interviewed criminal suspects, as well as victims and witnesses of crimes.

### III. SUMMARY OF PROBABLE CAUSE

6.  On July 20, 2019, Los Angeles Police Department ("LAPD") officers on patrol saw LEE drinking an alcoholic beverage in public.  LEE walked away from the officers before being stopped by them.  Officers conducted a pat-down of LEE's person and discovered an "L"-shaped object in LEE's front left pants pocket, which officers immediately recognized to be a firearm.  LEE is a convicted felon.

### IV. STATEMENT OF PROBABLE CAUSE

7.  Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

**A.   LEE Arrested with a Loaded Pistol and Loaded Magazine**

8.  On or about July 20, 2019, LAPD Officers Peralta and Clark were working a gang enforcement assignment driving a marked black and white police car, in full uniform, near S. Grand Avenue and W. 82nd Street.  Officer M. Peralta and Officer M. Clark were conducting extra patrols in the area due to an ongoing feud between the 73 Gangster Crips and the 84th Street Mad Swan Bloods.

9.  Officers Clark and Peralta were driving northbound on S Grand Avenue approaching W. 82nd street when they saw LEE on the southeast corner of S. Grand Avenue and W. 82nd street.  LEE was drinking what officers believed to be an alcoholic beverage, in violation of 41.27(c), Los Angeles Municipal Code ("LAMC").

10. LEE looked in the direction of the officers and then bladed the left side of his body away from the officers. LEE walked away from officers at a fast pace, eastbound on the south sidewalk of W 82nd street. Officers Clark and Peralta believed, due to their training and experience, that LEE was concealing a firearm based on his evasive movements upon seeing the officers.

11. Officers Clark and Peralta then approached LEE in their marked police vehicle. Officers Clark and Peralta exited their vehicle and ordered LEE to place a dark glass container labeled "Pacifico" down and to place his hands behind his back. LEE was taken into custody without incident. Officer Peralta conducted a pat-down of LEE and noticed an "L"-shaped object in his front left pants pocket, which Officer Peralta immediately recognized to be a firearm. LEE spontaneously stated that he had the firearm to protect his home.

12. Officer Peralta recovered a Lorcin, model L25, .25 caliber handgun bearing serial number 004204. The firearm was loaded with one live round of .25 caliber ammunition in the chamber and a magazine containing seven rounds of live .25 caliber ammunition in the magazine well.

**B.   LEE's Criminal History**

13. On or about August 8, 2019, I reviewed LEE's criminal history using the California Law Enforcement Telecommunications System ("CLETS") database and learned that LEE has previously been convicted of the following felony crimes punishable by a term of imprisonment exceeding one year:

a.   On or about May 16, 2005, LEE was convicted of Possession of a Controlled Substance for Sale, in violation of California Health and Safety Code Section 11378, in the Superior Court of the State of California, County of Los Angeles, in case number TA07886501.

b.   On or about August 24, 2005, LEE was convicted of Possession of a Controlled Substance for Sale, in violation of California Health and Safety Code Section 11378, in the Superior Court of the State of California, County of Los Angeles, in case number YA06229401.

c.   On or about October 23, 2007, LEE was convicted of Felon in Possession of a Firearm, in violation of California Penal Code Section, 12021(a)(1), in the Superior Court of the State of California, County of Los Angeles, in case number LAMVA10281601.

d.   On or about July 11, 2012, LEE was convicted of Possession of a Controlled Substance for Sale, in violation of California Health and Safety Code Section 11378, in the Superior Court of California, County of Los Angeles, in case number COMPTA12397801.

e.   On or about February 23, 2015, LEE was convicted of Felon in Possession of a Firearm, in violation of California Penal Code Section 29800(a)(1), in the Superior Court of the State of California, County of Los Angeles, in case number LACBA43020401.

f.   On or about January 31, 2017, LEE was convicted of Possession of a Controlled Substance for Sale, in violation

of California Health and Safety Code Section 11378, in the Superior Court of the State of California, County of Los Angeles, in case number POMKA11437701.

**C.    Interstate Nexus**

16.    On August 7, 2019, an ATF Interstate Nexus Expert examined the ammunition and determined that the eight rounds of .25 ACP caliber ammunition with head stamp "Aguila 25 Auto" is ammunition as defined under 18 U.S.C. § 921(a)(17)(A) and that it was manufactured by Industrias Tecnos in Mexico.  It was determined that for this ammunition to be recovered in California, it had to travel in international and/or interstate commerce.

17.    Lorcin, the manufacturer of the firearm seized from LEE, was a California-based company.  A trace of the firearm showed that the firearm has not left California.

**V.   TRAINING AND EXPERIENCE ON FIREARMS OFFENSES**

14.    From my training, personal experience, and the collective experiences related to me by other law enforcement officers who conduct who conduct firearms investigations, I am aware of the following:

a.    Persons who possess, purchase, or sell firearms generally maintain records of their firearm transactions as items of value and usually keep them in their residence, or in places that are readily accessible, and under their physical control, such in their digital devices.  It has been my experience that prohibited individuals who own firearms illegally will keep the contact information of the individual

who is supplying firearms to prohibited individuals or other individuals involved in criminal activities for future purchases or referrals.  Such information is also kept on digital devices on their person and in backpacks or purses in their vicinity.

b.   Many people also keep mementos of their firearms, including digital photographs or recordings of themselves possessing or using firearms on their digital devices.  These photographs and recordings are often shared via social media, text messages, and over text messaging applications.

c.   Those who illegally possess firearms often sell their firearms and purchase firearms.  Correspondence between persons buying and selling firearms often occurs over phone calls, e-mail, text message, and social media message to and from smartphones, laptops, or other digital devices.  This includes sending photos of the firearm between the seller and the buyer, as well as negotiation of price.  In my experience, individuals who engage in street sales of firearms frequently use phone calls, e-mail, and text messages to communicate with each other regarding firearms that the sell or offer for sale. In addition, it is common for individuals engaging in the unlawful sale of firearms to have photographs of firearms they or other individuals working with them possess on their cellular phones and other digital devices as they frequently send these photos to each other to boast of their firearms possession and/or to facilitate sales or transfers of firearms.

d.     Individuals engaged in the illegal purchase or sale of firearms and other contraband often use multiple digital devices.

## VI. TRAINING AND EXPERIENCE ON DIGITAL DEVICES[1]

15.   Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that the following electronic evidence, inter alia, is often retrievable from digital devices:

a.     Forensic methods may uncover electronic files or remnants of such files months or even years after the files have been downloaded, deleted, or viewed via the Internet.  Normally, when a person deletes a file on a computer, the data contained in the file does not disappear; rather, the data remain on the hard drive until overwritten by new data, which may only occur after a long period of time.  Similarly, files viewed on the Internet are often automatically downloaded into a temporary directory or cache that are only overwritten as they are replaced with more recently downloaded or viewed content and may also be recoverable months or years later.

b.     Digital devices often contain electronic evidence related to a crime, the device's user, or the existence of

---

[1] As used herein, the term "digital device" includes any electronic system or device capable of storing or processing data in digital form, including central processing units; desktop, laptop, notebook, and tablet computers; personal digital assistants; wireless communication devices, such as paging devices, mobile telephones, and smart phones; digital cameras; gaming consoles; peripheral input/output devices, such as keyboards, printers, scanners, monitors, and drives; related communications devices, such as modems, routers, cables, and connections; storage media; and security devices.

evidence in other locations, such as, how the device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents, programs, applications, and materials on the device.  That evidence is often stored in logs and other artifacts that are not kept in places where the user stores files, and in places where the user may be unaware of them.  For example, recoverable data can include evidence of deleted or edited files; recently used tasks and processes; online nicknames and passwords in the form of configuration data stored by browser, e-mail, and chat programs; attachment of other devices; times the device was in use; and file creation dates and sequence.

        c.    The absence of data on a digital device may be evidence of how the device was used, what it was used for, and who used it.  For example, showing the absence of certain software on a device may be necessary to rebut a claim that the device was being controlled remotely by such software.

        d.    Digital device users can also attempt to conceal data by using encryption, steganography, or by using misleading filenames and extensions.  Digital devices may also contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed.  Law enforcement continuously develops and acquires new methods of decryption, even for devices or data that cannot currently be decrypted.

    16.  Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that it is not always possible to search devices for data

during a search of the premises for a number of reasons, including the following:

    a.   Digital data are particularly vulnerable to inadvertent or intentional modification or destruction.  Thus, often a controlled environment with specially trained personnel may be necessary to maintain the integrity of and to conduct a complete and accurate analysis of data on digital devices, which may take substantial time, particularly as to the categories of electronic evidence referenced above.  Also, there are now so many types of digital devices and programs that it is difficult to bring to a search site all of the specialized manuals, equipment, and personnel that may be required.

    b.   Digital devices capable of storing multiple gigabytes are now commonplace.  As an example of the amount of data this equates to, one gigabyte can store close to 19,000 average file size (300kb) Word documents, or 614 photos with an average size of 1.5MB.

    17.  The search warrant requests authorization to use the biometric unlock features of a device, based on the following, which I know from my training, experience, and review of publicly available materials:

    a.   Users may enable a biometric unlock function on some digital devices.  To use this function, a user generally displays a physical feature, such as a fingerprint, face, or eye, and the device will automatically unlock if that physical feature matches one the user has stored on the device.  To unlock a device enabled with a fingerprint unlock function, a

user places one or more of the user's fingers on a device's fingerprint scanner for approximately one second.  To unlock a device enabled with a facial, retina, or iris recognition function, the user holds the device in front of the user's face with the user's eyes open for approximately one second.

b.   In some circumstances, a biometric unlock function will not unlock a device even if enabled, such as when a device has been restarted or inactive, has not been unlocked for a certain period of time (often 48 hours or less), or after a certain number of unsuccessful unlock attempts.  Thus, the opportunity to use a biometric unlock function even on an enabled device may exist for only a short time. , I do not know the passcodes of the devices likely to be found in the search.

c.   Thus, the warrant I am applying for would permit law enforcement personnel to, with respect to any device that appears to have a biometric sensor and falls within the scope of the warrant: (1) depress LEE's thumb- and/or fingers on the device(s); and (2) hold the device(s) in front of LEE's face with his eyes open to activate the facial-, iris-, and/or retina-recognition feature.

2.   Other than what has been described herein, to my knowledge, the United States has not attempted to obtain this data by other means.

## VII. CONCLUSION

18.  For all of the reasons described above, there is probable cause to believe that LEE has committed a violation of 18 U.S.C. § 922(g)(1): Felon in Possession of Ammunition.  There

is also probable cause that the items to be seized described in Attachment B will be found in a search of the person described in Attachment A.

_____ /s/ _____
George Poor / Special Agent
ATF

Subscribed to and sworn before me
this 14 day of August, 2019.

JOHN E. MCDERMOTT

_____
UNITED STATES MAGISTRATE JUDGE

12